UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

HARVEY LEE EASON,  　　　　　　　　　Civil No. 07-2306 RHK/JJG

　　　　　Petitioner,
　　　　　　　　　　　　　　　　　　　　**REPORT AND**
v.　　　　　　　　　　　　　　　　　　　**RECOMMENDATION**

STATE OF MINNESOTA,

　　　　　Respondent.
_____

JEANNE J. GRAHAM, United States Magistrate Judge.

The above-entitled matter is before the Court on Petitioner Harvey Eason's Amended Petition for Writ of Habeas Corpus (Docket No. 5) pursuant to 28 U.S.C. ' 2254. The case has been referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. ' 636 and D. Minn. LR 72.1(c). Petitioner appears pro se. Respondent is represented by Scott A. Hersey, Assistant Dakota County Attorney. Based upon review of the file, record, and proceedings herein, the undersigned recommends that Harvey Eason's Petition for Writ of Habeas Corpus be dismissed without prejudice.

## I.　　BACKGROUND[1]

Petitioner Harvey Eason ("Eason") was tried in Dakota County, Minnesota for Aiding and Abetting Attempted Murder in the First Degree in violation of Minn. Stat. '' 609.05, subd.1, 609.185(a)(1) (2004); Conspiracy to Commit Murder in the First Degree in violation of Minn. Stat. ' 609.175, subd. 2(2) (2004); and

---

[1] The following summary of the background of this case is based on the trial court's findings of facts issued after a bench trial, which is included in Respondent's Appendix Part I, (Doc. No. 9).

Aiding and Abetting Assault in the First Degree in violation of Minn. Stat. '' 609.05, subd. 1, 609.221, subd. 1 (2004).  State v. Eason, No. A05-1741, 2007 WL 46013 (Minn. Ct. App. January 9, 2007) (hereafter "Eason"). He waived his right to a jury trial.  A bench trial was held before the Honorable Karen Asphaug.  She convicted Eason of all charges through factual findings made on March 7, 2005.

### a. Trial Court's Factual Findings

This case involved the shooting of Lee Murray ("Murray"), by a man named Richard Lindorff ("R. Lindorff") on August 12, 2004.  Eason was charged with helping R. Lindorff commit the shooting. However, the matter really started back in 1996, when Murray shot R. Lindorff's nephew, James Lindorff.  Murray was convicted of Assault in the First Degree and sentenced to 126 months in prison.  James Lindorff later died from his injuries in connection with the shooting.  Murray was paroled in March 2004.  R. Lindorff kept track of Murray's incarceration status and was aware of Murray's release in March 2004.

Murray was long-time friend of Eason's.  The friendship was so strong that they referred to each other as brothers.  Eason, who then went by the nickname "Winston", also knew R. Lindorff, because he worked on Eason's cars.

On August 10, 2004, two days before the shooting involved in this case, Eason spread the word that he wanted to talk to Murray about a robbery at his girlfriend's home.  Apparently, Eason suspected that Murray was involved. So, on August 11, 2004, Eason asked him to go for a ride to Minneapolis. Eason picked up Murray in a burgundy Cadillac.  During the ride, Eason told

Murray that he had been robbed and said, "I hope it ain't you." Murray testified he thought it was a joke. Nothing else of import happened at that meeting and they went their separate ways.

Late that night, Murray contacted Eason and they made plans for Eason to pick him up on a street corner, where Eason had picked him up in the past. Murray waited at the corner for fifteen minutes and then went back to his house, only to learn that Eason had just called to say he was on the way.

So, Murray returned to the street corner and saw a distinctive burgundy Cadillac, which he identified as Eason's car. The car drove slowly by on Yankee Doodle Road, but did not turn onto the street where Murray was waiting. The next thing Murray saw was a white man walking directly at him from the area of Yankee Doodle Road. He asked the man if he needed something. The man responded, "I need you, Lee." The man pulled a handgun out of his pocket and began to shoot Murray, who backed away and fell to the ground. Murray played dead and the man ran off.

To fill in what happened leading up to the shooting, the court heard from Troy Zenon ("Zenon"), R. Lindorff's roommate in the summer of 2004. Zenon was at R. Lindorff's home late on August 11, 2004, when he saw Eason and R. Lindorff talking. At one point, R. Lindorff retrieved a telephone from the kitchen for Eason. Zenon believed that Eason made a phone call from R. Lindorff's home around 1:30 am on August 12, 2004. Telephone records confirm that the call made to Murray that morning was from the home of R. Lindorff at 1:30 a.m.

After Eason made the phone call, R. Lindorff and Zenon, who are Caucasian, and Eason, who is African American, got into the burgundy Cadillac. Eason drove, Zenon was in the front passenger seat, and R. Lindorff was in the backseat. Zenon assumed they were going to pick up drugs. He described going to the townhouses at Wescott Square. Zenon said the car slowed down by a driveway entrance and Eason told R. Lindorff that Murray would be waiting "over there in the parking lot." Then, R. Lindorff got out of the car, and Zenon heard several sounds like gunshots. R. Lindorff returned to the car and they drove away. They stopped at a gas station to buy cigarettes after they left the townhouse development.

At the same time, a Woodbury police officer happened to run the Cadillac's plates at the gas station. He found that the registered owner had an active warrant for her arrest. The owner of the car was Eason's sister. The officer did not stop the car, because he didn't see a female driver or passenger. Instead, he saw only one white man in the front seat, one in the back, and an African American man driving the car.

Just 15 minutes before Eason drove the Cadillac into that gas station and 30 minutes after Eason called Murray to say he was on the way, the Eagan Police Department received a 911 call from a resident of Westcott Square, located in Dakota County. The caller reported hearing six gunshots, followed by a person calling for help. Then, the police department received a second 911 call, by a woman who resided at 919 Wescott Square, reporting that her nephew was shot.

Police were dispatched to the home of Audrey and Charles Godfrey, relatives of Murray. There, they found Murray lying on the floor. He told the officers a white male, whom he thought might have been the father of someone he shot eight years earlier, had shot him. While he was in the ambulance on the way to Regions Hospital, he said he only saw one person at the time of the shooting. Murray was shot with 9mm ammunition, and cartridge casings were found on the floor near him. The trauma surgeon who treated Murray said he would have died from his wounds without treatment. Murray remained in the hospital for one month and had eight surgeries.

In October 2004, when Murray was finally well enough to speak, he said he thought R. Lindorff was the person who shot him. He selected R. Lindorff's picture out of a photo display, and identified him as the shooter.

Further evidence indicated, that R. Lindorff told Zenon that he got the gun from "Winston". Although Eason had previously possessed guns and was later found in possession of a 9mm gun and ammunition at his house, the gun used in the offense was never found. However, a search done at R. Lindorff's home revealed a notebook with Eason's nickname, "Winston" in it and a phone number connected to Eason.

Several weeks later, Eason was arrested. He admitted being the driver of the Cadillac, but denied being involved in the shooting. At trial, Eason and his girlfriend testified as to Eason's alibi on the night of the shooting. The court found the alibi testimony was not credible. Defendant was convicted on all three counts.

**b. Procedural Background**

Eason appealed his conviction to the Minnesota Court of Appeals. See Eason, 2007 WL 46013 (Minn. Ct. App. January 9, 2007). He challenged the sufficiency of the evidence to support his conviction, and the admission of evidence of his other crimes. Id. Eason also filed a pro se supplemental brief with the Minnesota Court of Appeals. (Appendix Part 2, Docket No. 10). He argued that his trial counsel was ineffective because she failed to subpoena a witness; failed to make proper objections; and failed to obtain certain evidence. He alleged that certain witnesses committed perjury, and that he is innocent. The Court of Appeals upheld the convictions, and affirmed the trial court. The Minnesota Supreme Court denied review. Eason, 2007 WL 46013 (Minn. Ct. App. January 9, 2007) rev. denied (March 28, 2007).

Eason first filed a Petition for Writ of Habeas Corpus with this Court on May 15, 2007. He was ordered to file an amended petition in the proper form, which he did on June 12, 2007. In his amended petition, Eason states four grounds for relief. In Ground One, he alleges the trial court denied him due process by failing to make specific, written factual findings to support his conviction of Conspiracy or Attempt to Commit First Degree Murder.

In Ground Two, he alleges he was denied a fair hearing because the prosecution forced a witness against his Fifth Amendment right not to testify. In Ground Three, Eason alleges his constitutional due process right to present a meaningful defense was violated with respect to his alibi defense.

6

In Ground Four of the amended petition, Eason asserts a double jeopardy violation, which he describes as follows:

> Law of the State of Minnesota prohibit convicting, prosecuting, or sentencing an accuse[d] of the same conduct in a single behavioral incident. Here the defendant was convicted of attempted murder in the first degree, aiding and abetting Minn. Stat. 609.185(a)(1), Subd. 4(1); 609.05, Subd. 1 Count-2, Conspiracy to commit murder in the first degree Minn. Stat. 609.175, Subd.2(2) Count-3 Assault in the first degree (aiding and abetting Minn. Stat. '609.221, Subd. 1; 609.05, Subd. 1 609,101, subd.2. Because assault in the first degree aiding & abetting is the lesser included offense, the accuse[d] could be found guilty of the lesser crime where there [are] different degree to the same offense…

(Amended Petition for Writ of Habeas Corpus, at 6, Docket No. 5).

In response to the following question on the habeas form:

> If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them

Eason responded:

> The accuse[d] is guaranteed a fair a [sic] impartial tribunal to exercise his private rights to have the same judge to find probable cause, would deny him a neutral magistrate to proceed during the trial by court.

(Id.)

On June 18, 2007, Eason filed a Petition to Vacate / Set Aside and Correct Sentence with the trial court in Dakota County. (Appendix 1, Docket No. 9). The respondent, State of Minnesota, treated the petition to vacate as a petition for post-conviction relief and filed a memorandum in opposition. (Id.)

7

The record presently before this Court indicates Eason's petition for post-conviction relief is still pending in state court. The issues before the post-conviction court are whether Eason's rights under the due process and equal protection clauses of the Fourteenth Amendment were violated. Eason further described his claims as follows:

> The petitioner was found guilty by the court, Minn.R.Crim.P. 26.01, Subd. 2. is a mandatory canon of law which prescribes within 7 days finding the court is required to specific written findings to establish a defendant's guilt. Second the petitioner was sentenced as the actual person who pulled the trigger, when the court found him guilty of aiding and abetting.

(Petition to Vacate / Set Aside and Correct Sentence, Appendix 1, Docket No. 9.)

Respondent filed a response to the amended petition for writ of habeas corpus on August 1, 2007. (Docket No. 7.) Respondent asserts that Petitioner either waived or failed to exhaust his remedies for each of the claims in the habeas petition.

## II.   DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a federal court's review of habeas corpus petitions filed by state prisoners. Section 2254 of the AEDPA provides that a district court will entertain a petition for writ of habeas corpus submitted by a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A petitioner must exhaust his state court remedies before presenting claims in a federal habeas petition, and does so by fairly presenting his federal constitutional claims to the highest available state court. O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999). State courts are obliged to enforce federal law, and comity requires federal courts to allow state courts to have the first opportunity to review claims of violation of federal law. Id. at 844.

A federal claim is fairly presented when the petitioner refers to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue. McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997). If a petition contains claims that have not been fairly presented, the court must then determine if those claims are unexhausted or procedurally defaulted. A claim is unexhausted if the claim has not been fairly presented in one complete round of the State's established appellate review process, but the petitioner has the right, under state law, to raise the claim by any available procedure. 28 U.S.C. § 2254(c); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

A constitutional claim is procedurally defaulted if it has not been fairly presented in the state courts, and the state courts will no longer review it because an independent and adequate state procedural rule precludes further litigation of the claim. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Federal habeas review is then barred unless the prisoner can demonstrate cause and prejudice for the default, or that the failure to consider the claims will result in a fundamental miscarriage of justice. Id.

9

Respondent argues the claim in Ground One of the amended petition, concerning the trial court's failure to issue findings of fact, is procedurally defaulted. Respondent recognizes that this claim is currently pending before the state trial court on a petition for post-conviction relief, which indicates the possibility that the claim could be exhausted if Eason completes one full round of the state courts' appellate review process.

This Court's review of the record indicates that Eason failed to raise this claim on direct appeal of his conviction. He did, however, raise this issue as a constitutional claim in a pending petition for post-conviction relief. Therefore, Ground One is an unexhausted claim which is currently pending before the state post-conviction court. This claim should be dismissed without prejudice until the post-conviction court has addressed it, and exhausted through one complete round of the state's collateral review process.

Respondent correctly asserts that Eason did not raise his second, third, or fourth[2] claims of his amended petition in either his direct appeal or his pending petition for post-conviction relief. These claims have not been exhausted. This Court recognizes that Eason may be procedurally barred from raising these claims in a post-conviction motion. See, State v. Knaffla, 243 N.W. 2d 737, 741 (Minn. 1976) (barring, with few exceptions, post-conviction consideration of matters raised or known, but not presented on direct appeal). However, it is

---

[2] Although Eason challenged his sentencing under Minnesota law on direct appeal and in his post-conviction motion, he did not fairly present a federal constitutional claim by alleging that his sentencing violated the double jeopardy clause of the federal constitution, as he does in Ground Four of his amended petition for habeas relief. Although Ground Four could also be read as raising an ineffective assistance of counsel claim because Petitioner alleged his counsel failed to raise the double jeopardy claim, Respondent has interpreted and responded to Ground Four as a double jeopardy claim. Even if Petitioner's intent was to present an ineffective assistance of counsel claim, he did not present such a claim on direct appeal or in his post-conviction motion.

10

preferable for the Minnesota state courts to decide if any of Eason's unexhausted federal constitutional claims can be heard and decided on the merits in a post-conviction motion, or if the claims are barred by the state's procedural rules. See Murray v. Hvass, 269 F.3d 896, 899 (8th Cir. 2001) (stating "it is not the province of a federal court to decide whether a matter ought to be considered procedurally defaulted under state law");Oleynik v. State, No. Civ. 04-3131 JNE/JSM, 2005 WL 1324088, at *2 (D. Minn. June 2, 2005) (dismissing claims as unexhausted). Therefore, these claims should also be dismissed without prejudice.[3]

## I. CONCLUSION

Petitioner failed to exhaust any of his habeas claims in the state courts. Therefore, the petition should be dismissed without prejudice to allow Eason an opportunity to exhaust his federal constitutional claims in state court.

## II. RECOMMENDATION

Based upon review of the file, record, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

> (1) the Amended Petition for Writ of Habeas Corpus (Docket No. 5) be dismissed without prejudice.

DATED: April 11, 2008     s/ *Jeanne J. Graham*
                          JEANNE J. GRAHAM
                          United States District Judge

---

[3] There is a one-year statute of limitations for federal habeas claims, which begins when the state court judgment becomes final. 28 U.S.C. ' 2244(d)(1). The Minnesota Supreme Court denied review of Petitioner's case on March 28, 2007. Petitioner filed a petition for post-conviction relief on June 18, 2007. A properly filed petition for post-conviction relief tolls the federal habeas statute of limitations. 28 U.S.C. ' 2244(d)(2); see Carey v. Saffold, 536 U.S. 214, 219-20 (2002) (limitation period tolled until state post-conviction application has achieved final resolution through the ordinary state collateral review process). Assuming petitioner's motion for post-conviction relief was properly filed and has not yet been exhausted through the appellate process, he is not in danger of the statute of limitations expiring on his habeas claims.

11

**NOTICE**

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **April 25, 2008**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words.  A district judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.